UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 10-23728-CIV-O'SULLIVAN

[CONSENT CASE]

BISCAYNE COVE CONDOMINIUM
ASSOCIATION, INC.,
          Plaintiff,

v.

QBE INSURANCE CORPORATION,
          Defendant.
_____/

## ORDER

        THIS MATTER is before the Court on the Plaintiff Biscayne Cove Condominium

Association's Motion for Summary Judgment on Both Counts of the Second Amended

Complaint (DE# 101, 4/5/13).

## BACKGROUND

        The plaintiff filed its two-count second amended complaint on August 10, 2012.

See Second Amended Complaint (DE# 38, 8/10/12). In Count I, the plaintiff sought

declaratory relief that the damage to the windows and sliding glass doors of

condominium units was covered under the QBE insurance policy. In Count II, the

plaintiff sought declaratory relief that it was entitled to have its dispute regarding the

amount of its loss resolved through the appraisal process described in the QBE

insurance policy. In response to the Second Amended Complaint (DE# 38, 8/10/12),

the defendant asserted ten affirmative defenses. See Defendant QBE's Answer and

Affirmative Defenses to Plaintiff's Second Amended Complaint (DE# 71, 2/13/13).

        On April 5, 2013, the plaintiff filed the instant motion for final summary judgment

on both counts of the complaint. See Plaintiff Biscayne Cove Condominium

Association's Motion for Summary Judgment on Both Counts of the Second Amended

Complaint (DE# 101, 4/5/13). On the same day, the plaintiff filed a statement of

material facts. See Plaintiff Biscayne Cove Condominium Association's Statement of

Material Facts in Support of Its Motion for Summary Judgment (DE# 100, 4/5/13). The

defendant filed its response in opposition to the motion for summary judgment and its

response to the plaintiff's statement of material facts on April 25, 2013. See

Defendant's Response to Plaintiff's Motion for Summary Judgment (D.E. 101) (DE#

107, 4/25/13); Defendant QBE Insurance Corporation's Response to Plaintiff's

Statement of Material Facts in Support of its Motion for Summary Judgment [D.E. 101]

(DE# 108, 4/25/13). The plaintiff filed its reply on May 6, 2013. See Plaintiff Biscayne

Cove Condominium Association's Reply to Defendant QBE Insurance Corporation's

Opposition to Plaintiff's Motion for Summary Judgment (DE# 118, 5/6/13). This matter

is ripe for consideration.

## FACTS[1]

The plaintiff purchased a QBE insurance policy numbered QF2862-07, insuring

the Biscayne Cove condominium property. On October 24, 2005, Hurricane Wilma

struck South Florida and caused damage to the insured condominium property. That

damage included, but was not limited to, damage to windows and sliding glass doors

---

[1] The facts stated in this section are undisputed by the parties as indicated in the Plaintiff Biscayne Cove Condominium Association's Statement of Material Facts in Support of Its Motion for Summary Judgment (DE# 100, 4/5/13) and the Defendant QBE Insurance Corporation's Response to Plaintiff's Statement of Material Facts in Support of its Motion for Summary Judgment [D.E. 101] (DE# 108, 4/25/13).

that provide access to the individual condominium units. On October 26, 2005, the plaintiff notified the defendant of its Hurricane Wilma loss by forwarding to the defendant an Acord form. See Acord Property Loss Notice (DE# 100-1, 4/5/13). The Acord form advised the defendant that the Biscayne Cove condominium property had sustained "severe damage," including "windows out" and "sliders broken." Id.

The defendant's managing general agent, Florida Intracoastal Underwriters, Ltd. (hereinafter "FIU"), retained an independent adjusting firm, Interloss, Inc. (hereinafter "Interloss"), to inspect the damage at the Biscayne Cove condominium property, document the loss and report back to FIU concerning the loss. Handwritten notes prepared by Interloss described the plaintiff's loss as involving a combination of regular windows, floor to ceiling windows and sliding glass doors. See Interloss Field Scope Notes #1 (DE# 100-2, 4/5/13). These notes also reflected damage to the roof and contained a notation indicating that one of the insured buildings "may need a new roof." Id. Other handwritten notes indicated "leaks via many SGD [sliding glass doors] + windows." Id. The notes also stated that there was water intrusion in 150 apartments according to "surveys." See Interloss Field Scope Notes # 3 (DE# 100-3, 4/5/13).

On November 21, 2005, less than one month after Hurricane Wilma, an "initial report" prepared by FIU reflected that the Interloss adjuster, Robert Sansone, had inspected the Biscayne Cove condominium property and initially estimated the damages at $1.7 million, well in excess of the approximately $1.4 million deductible. See FIU's Initial Report (DE# 100-4, 4/5/13). The defendant later determined that the amount of loss was below the windstorm deductible. See Closing Report (DE# 100-5, 4/5/13). On October 19, 2010, the plaintiff sent the defendant a letter demanding

3

appraisal. <u>See</u> Defendant QBE's Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (DE# 71 at ¶48, 2/13/13).

In its response to the plaintiff's interrogatories, the defendant acknowledged that windows and sliding glass doors that provide access to the individual condominium units are covered property under the subject insurance policy. <u>See</u> Defendant's Notice of Serving Its Verified Answers to Plaintiff's First Set of Interrogatories (DE# 100-7, 4/5/13).

## <u>STANDARD OF REVIEW</u>

The Court in reviewing a motion for summary judgment is guided by the standard set forth in Federal Rule of Civil Procedure 56(a), which states, in relevant part, as follows: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of meeting this exacting standard. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). That is, "[t]he moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting <u>Celotex</u>, 477 U.S. at 323). In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. <u>Batey v. Stone</u>, 24 F.3d 1330, 1333 (11th Cir. 1994). Summary judgment is appropriate when there is no dispute as to any material

4

fact and only questions of law remain. Id. If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. Celotex, 477 U.S. at 322-23. Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. Id. As the Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id. at 322-23. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the trier of fact could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

## ANALYSIS

The plaintiff seeks summary judgment on both counts of the Second Amended Complaint (DE# 38, 8/10/12). In the instant case, the defendant has asserted ten affirmative defenses. See Defendant QBE's Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (DE# 71, 2/13/13). Because the defendant's affirmative defenses may affect whether the plaintiff is entitled to summary judgment on

Counts I and II of the Second Amended Complaint (DE# 38, 8/10/12), the undersigned will address the defendant's affirmative defenses first.

**1.      Defendant's Affirmative Defenses**

**A.      Affirmative Defenses 1, 2 and 3**

The first three affirmative defenses asserted by the defendant relate to the plaintiff's alleged failure to comply with certain provisions of the policy. These affirmative defenses are the following:

**First Affirmative Defense**

(Failure to perform Conditions Precedent)

Plaintiff has failed to perform all conditions precedent to filing suit in that Plaintiff failed to comply with its duties in the event of loss or damage as set forth in the subject policy (CP 00 17 04 02, p. 9 and 10). Specifically, Plaintiff failed to comply with the conditions precedent as follows: (1) not providing prompt notice of the subject loss or damage which is the subject of the present claim including a description of the property involved until approximately five years after the claimed loss or damage; (2) failing to provide QBE "as soon as possible" a description of how when and where the loss or damage occurred. (3) filing suit without providing QBE with an opportunity to obtain compliance with post loss conditions prior to suit being filed, including the opportunity to request a Sworn Statement in Proof of Loss or to obtain information by examinations under oath.

**Second Affirmative Defense**

(Breach of Policy by Plaintiff)

Plaintiff has failed to comply with the terms of the subject policy (CP 00 17 04 02, p. 9 and 10). Specifically, Plaintiff has breached the provisions of the subject insurance contract as follows: (1) not providing prompt notice of the subject loss or damage which is the subject of the present claim including a description of the property involved until approximately five years after the claimed loss or damage; (2) failing to provide QBE "as soon as possible" a description of how when and where the loss or damage occurred. (3) filing suit without providing QBE with an opportunity to obtain compliance with post loss conditions prior to suit being filed, including the opportunity to request a Sworn Statement in Proof of Loss or

6

to obtain information by examinations under oath (4) failing to cooperate
with the insurer in the investigation of the claim by failing to provide an
opportunity to inspect and investigate the claim prior to the filing of suit.

### Third Affirmative Defense

(Suit Barred by terms of Policy)

Plaintiff's claim is barred by the terms of the policy which provides in the
Commercial Property Conditions endorsement (CP 00 90 07 08) that "No
one may bring a legal action against us under this Coverage Part unless…
there has been full compliance with all of the terms of this Coverage Part .
. . . " Because Plaintiff has failed to comply with the terms of its "Duties in
the Event Of Loss or Damage prior to filing suit (CP 00 17 04 02, p. 9 and
10) this suit is barred by the terms of the policy.

Defendant QBE's Answer and Affirmative Defenses to Plaintiff's Second Amended

Complaint (DE# 71 at ¶¶62-64, 2/13/13).

The plaintiff argues that it is entitled to summary judgment on these first three

affirmative defenses because "Biscayne Cove promptly notified QBE, through the Acord

form . . . that the insured building sustained 'severe' damage as a result of Hurricane

Wilma." See Plaintiff Biscayne Cove Condominium Association's Motion for Summary

Judgment on Both Counts of the Second Amended Complaint (DE# 101 at 7, 4/5/13).

The defendant argues that the plaintiff has not complied with its post-loss obligations

under the policy. See Defendant's Response to Plaintiff's Motion for Summary

Judgment (D.E. 101) (DE# 107 at 8, 4/25/13) (stating that "Biscayne Cove was not in

compliance with the Policy post loss conditions because it had still not complied with

QBE's requests for property re-inspection, documents, and information which were

made by Mr. Sansone."). In its reply, the plaintiff states that the argument that the

plaintiff has not sufficiently complied with the insurance policy's post-loss obligations

provisions was never raised in the Defendant QBE's Answer and Affirmative Defenses

to Plaintiff's Second Amended Complaint (DE# 71, 2/13/13) and thus it is not properly before the Court. See Plaintiff Biscayne Cove Condominium Association's Reply to Defendant QBE Insurance Corporation's Opposition to Plaintiff's Motion for Summary Judgment (DE# 118 at 2, 5/6/13).

The undersigned finds that the issue of whether the plaintiff complied with its post-loss obligations is properly before the Court. Affirmative defense 2 states, in part, that the plaintiff breached the terms of the subject insurance policy by "failing to cooperate with the insurer in the investigation of the claim by failing to provide an opportunity to inspect and investigate the claim prior to the filing of suit." Defendant QBE's Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (DE# 71 at ¶63, 2/13/13). Affirmative defense 3 states, in part, that "[b]ecause Plaintiff has failed to comply with the terms of its 'Duties In The Event Of Loss Or Damage[']' prior to filing suit (CP 00 17 04 02, p. 9 and 10) this suit is barred by the terms of the policy." Id. at ¶64. Thus, the issue of whether the plaintiff complied with its post-loss obligations under the insurance policy is squarely before this Court.

The undersigned will now turn to the parties' substantive arguments. Affirmative defenses 1, 2 and 3 concern the "Duties In The Event Of Loss Or Damage" provision of the policy. This provision reads as follows:

**3.    Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

**(2) Give us prompt notice of the loss or damage. Include a description of the property involved.**

8

**(3) As soon as possible, give us a description of how, when and where the loss or damage occurred**.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination. **(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed**.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request.** We will supply you with the necessary forms

**(8) Cooperate with us in the investigation or settlement of the claim.**

**b. We may examine any insured under oath**, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Insurance Policy (DE# 101-2 at 51-52, 4/5/13) (CP 00 17 04 02, p. 9 and 10) (emphasis

added).

For the reasons stated below, the undersigned concludes that the only portion of

affirmative defenses 1, 2 and 3 that can be disposed of on summary judgment are

those portions related to the plaintiff's compliance with the initial notice requirement in section E.3.a.(2) of the policy. It is undisputed that on October 24, 2005, Hurricane Wilma struck South Florida. See Second Amended Complaint (DE# 38 at ¶10, 8/10/12); Defendant QBE's Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (DE# 71 at ¶10, 2/13/13). It is further undisputed that on October 26, 2005, the plaintiff forwarded to the defendant an Acord form (DE# 101-1, 4/5/13). The Acord form advised the defendant that the plaintiff sustained "severe damage," including "windows out" and "sliders broken." Id.

Two judges in this district when confronted with similar QBE insurance policies have found that the insured complied with the "prompt notice" requirement of the "Duties In The Event Of Loss Or Damage" provision of the policy by notifying QBE of the loss within days of Hurricane Wilma. In Ocean View Towers Ass'n. Inc. v. QBE Ins. Corp., No. 11-60447-CIV, 2011 WL 6754063, at *9 (S.D. Fla. Dec. 22, 2011) (J. Scola), reconsideration denied in 2012 WL 8569, at *2 (S.D. Fla. Jan. 1, 2012), this Court granted summary judgment for the insured on QBE's affirmative defense that the insured failed to comply with the requirements of the "Duties In The Event Of Loss Or Damage" provision of the policy. In that case, the insured notified QBE of its loss between October 25 and 29, 2005. Id. The insured's "loss notice identified roof, building, and glass damage to the condominium." Id. In granting summary judgment for the insured, this Court noted that QBE could have required "complete inventories of the damaged and undamaged property," could have requested "an opportunity 'to inspect the property . . . and examine [its] books and records,'" and could have taken samples, requested a proof of loss or taken an examination under oath. Id. (citing Insurance

10

Policy) (internal quotation marks and alternations in original). However, because QBE did not make any additional requests of its insured, this Court found that the insured had complied with its post loss obligations as a matter of law. Id. In ruling against QBE, this Court noted that:

> the policy required [the insured] to provide prompt notice of the "loss or damage." It did so by informing QBE of the Hurricane Wilma "loss." **The insurance contract required no more. QBE had a full and fair opportunity to investigate the damage from the windstorm loss and to request additional information from [the insured], but failed to fully do so.** Absent such, [the insured] was under no obligation to give QBE notice of the additional claimed damages before filing suit.

Id. (citations to the record omitted) (emphasis added).

Similarly in Summit Towers Condo. Ass'n, Inc. v. QBE Ins. Corp., No. 11-cv-60601, this Court found that the insured fully complied with its post-loss obligations as a matter of law when it notified QBE of the loss it sustained within 10 days of Hurricane Wilma. See Summit Towers Condo. Ass'n, Inc. v. QBE Ins. Corp., Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and Denying Motion for Hearing (DE# 138 in Case No. 11-cv-60601 at 7, 4/26/12) (J. Seitz). In finding that the insured fully complied with section E.3.a.(2) of the policy, this Court noted that:

> The Policy language at issue here is clear and unambiguous. It required [the insured] to give QBE prompt notice of loss or damage to covered property, including a description of the property involved. The Court finds no disputed issue of fact that [the insured] satisfied this requirement. Within ten days of Hurricane Wilma, two letters were provided to QBE referencing Hurricane Wilma damage to the covered property - the buildings - and included a description of the property involved - fence, glass, roof fans, roofs, pole lights and possibly other areas. This is all that [the insured] was required to do under the Policy.

Id. (citations to the record omitted) (citing Ocean View Towers, 2011 WL 6754063, at *9 (S.D. Fla. Dec. 22, 2011).

In the instant case, the plaintiff notified the defendant within two days of sustaining damage from Hurricane Wilma. See Acord form (DE# 101-1, 4/5/13). The Acord form advised the defendant of the nature of the plaintiff's damages. Id. Therefore, the plaintiff has shown that it complied with section E.3.a.(2) of the policy by providing the defendant with "prompt notice of the loss or damage, includ[ing] a description of the property involved." (CP 00 17 04 02, p. 9 and 10); Insurance Policy (DE# 101-2 at 51, 4/5/13). "Under Florida law, insurance contracts are to be construed 'in accordance with the plain language of the policies as bargained for by the parties.'" State Nat. Ins. Co. v. White, 482 F. App'x 434, 438 (11th Cir. 2012) (per curiam) (quoting Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000)).

However, unlike Ocean View and Summit Towers, there is record evidence in the instant case that the defendant requested additional information of the plaintiff and there is, at the very least, a genuine issue of material fact as to whether the plaintiff complied with these requests for additional information. Specifically, the defendant has presented evidence that its adjuster, Robert Sansone,[2] had requested records and that, according to Mr. Sansone, the plaintiff's property manager did not provide them. See Deposition of Robert Sansone (DE# 108-3 at 12, 4/25/13). Thus, there is a genuine issue of material fact as to whether the plaintiff complied with its post-loss obligations in response to the defendant's requests for additional information. For this reason, the plaintiff is not entitled to summary judgment on its post-loss obligations after the

---

[2] The plaintiff's claim was assigned to Robert Sansone's company, Interloss, by FIU, the defendant's managing general agent. See Deposition of Robert Sansone (DE# 108-3 at 2, 4/25/13).

defendant made requests for additional information.

As further evidence that the plaintiff failed to comply with its post-loss obligations under the policy, the defendant submits the declaration of its attorney and a letter dated February 6, 2013 wherein the defendant requests additional information pursuant to the "Duties In The Event Of Loss Or Damage" provision of the policy. See February 6, 2013 Letter (DE# 108-4, 4/25/13). The defendant attached to its letter a Sworn Statement in Proof of Loss (DE# 108-4 at 7, 4/25/13) (hereinafter "POL") for the plaintiff to complete within 60 days. The letter further requested "the record of expenses incurred by [the plaintiff] in protecting the property from further damage," "complete inventories of the damaged and undamaged property" including "quantities, costs, values and amount of loss claimed," "identify[ing] . . . by unit number which windows and sliding glass doors suffered direct physical loss or damage requiring replacement as a result of Hurricane Wilma, and which did not." Id. at 5. The letter also provided notice to the plaintiff of the defendant's intent to inspect the property and conduct an examination under oath (hereinafter "EUO") and identified the areas the defendant would be inquiring into during the EUO. Id. at 5-6.

On or about April 1, 2013, the plaintiff submitted its response to the POL (DE# 108-4 at 8, 4/25/13). The plaintiff crossed out the following language from the POL: "no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss, has in any manner been made"[3] and included a

---

[3] In 200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp., the plaintiff submitted to the defendant a proof of loss form. See Order Denying Cross-Motions for Summary Judgment as to Count II of the Third Amended Complaint (DE# 199 at 4 in Case No. 10-61984, 1/14/13) (M.J. Otazo-Reyes). In responding to the proof of loss form, the

reference to its response to Interrogatory No. 2 as an explanation for why that language had been stricken from the POL (DE# 108-4 at 8, 4/25/13). Id. Additionally, in response to paragraphs 7 ("[t]he whole loss and damage was") and 9 ("[t]he amount claimed under the above numbered policy is") of the POL, the plaintiff directed the defendant to its interrogatory responses which it attached to the form. Id.

> According to the defendant:
>
> Plaintiff failed to provide QBE with the information requested in the POL form which sought the identification as to the amount of the damaged items. Rather, Plaintiff avoided providing this information and chose on its own to substitute information as to what it was claiming, instead of providing QBE with the information requested.

Defendant's Response to Plaintiff's Motion for Summary Judgment (D.E. 101) (DE# 107 at 12, 4/25/13). The defendant further notes that the plaintiff "has never provided QBE with the requested inventories of the damaged and undamaged items" and that the "witnesses who appeared for the EUO failed to provide information as to several important topics as to which QBE had requested information." Id.

The plaintiff maintains that its response to the February 6, 2013 letter came after the defendant had asserted its affirmative defenses to the Second Amended Complaint (DE# 38, 8/10/12) and therefore the issue is not properly before this Court. See Plaintiff Biscayne Cove Condominium Association's Reply to Defendant QBE Insurance Corporation's Opposition to Plaintiff's Motion for Summary Judgment (DE# 118 at 2,

---

plaintiff in 200 Leslie crossed-out certain language from that form. Id. The language that was crossed out in 200 Leslie was the same language that the plaintiff crossed out from its POL in the instant case. Referring to the crossed-out language, this Court stated that "this fact alone precludes a finding of compliance with the policy's post-loss conditions as a matter of law." Id. at 6-7.

5/6/13). The plaintiff also argues that it is improper for the Court to consider the February 6, 2013 letter as well as the accompanying declaration of QBE's attorney (DE# 108-4 at 1-2, 4/25/13) concerning that letter because these documents are "rank hearsay." Id. at 4 n.1. Because the undersigned has already determined that the plaintiff is not entitled to summary judgment on the issue of whether it complied with its post-loss obligations under the policy, it is unnecessary for the undersigned to consider the February 6, 2013 letter or the accompanying declaration at this time.

In sum, the plaintiff has established that it is entitled to summary judgment on the issue of its compliance with section E.3.a.(2) of the policy. The plaintiff's request for summary judgment as to the remaining portions of affirmative defenses 1, 2 and 3 is **DENIED**. In the instant case, there is a genuine issue of material fact as to whether the plaintiff has complied with some of its post-loss obligations under the policy.

### B.      Affirmative Defenses 4, 5, 6 and 7

The next group of affirmative defenses assert different reasons why the loss is excluded under the policy. These affirmative defenses are the following:

**Fourth Affirmative Defense**

(Excluded Causes of Loss)

(Ordinance or Law)

Some or all of Plaintiffs' alleged damages are excluded to the extent they were caused by excluded causes of loss or damage as set forth in Causes of Loss-Special Form (CP 10 30 04 02), Part B 1 a which limits coverage for loss or damage caused directly or indirectly by the enforcement of any ordinance or law, regardless of any other cause or event that contributes concurrently or in any sequence of the loss.

15

**Fifth Affirmative Defense**

(Excluded Causes of Loss)

(Wear and Tear and related causes)

Some or all of Plaintiffs' alleged damages are excluded to the extent they were caused by excluded causes of loss or damage as set forth in Causes of Loss-Special Form (CP 10 30 04 02), Part B2 which excludes coverage for loss or damage caused by or resulting from any of the following:

d. (1) Wear and tear;
    (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
                    * * *
(4) Settling, cracking, shrinking or expansion;
                    * * *
    f. Continuous or repeated seepage or leakage of water, or the presence of condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**Sixth Affirmative Defense**

(Excluded Causes of Loss)

(Defect)

Some or all of Plaintiffs' alleged damages are excluded to the extent they were caused by excluded causes of loss or damage as set forth in Causes of Loss-Special Form (CP 10 30 04 02), Part B 3 which provides that:

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
                    ***
c. Faulty, inadequate or defective:
(1) Planning, zoning, development, surveying, siting;
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, renovation or remodeling;

16

or
(4) Maintenance;
of part or all of any property on or off the described premises.

Defendant QBE's Answer and Affirmative Defenses to Plaintiff's Second Amended

Complaint (DE# 71 at ¶¶65-67, 2/13/13).

The seventh affirmative defense states that:

## Seventh Affirmative Defense

(Actual Cash value)

Any obligation of Defendant to pay under the policy is limited to the Actual
Cash Value pursuant to the Condominium Association Coverage Form
(CP 00 17 04 02) to the extent that Plaintiff has not repaired or replaced
damaged property or did not make such repairs as soon as reasonably
possible after the loss or damage.

Defendant QBE's Answer and Affirmative Defenses to Plaintiff's Second Amended

Complaint (DE# 71 at ¶¶65-68, 2/13/13).

With respect to affirmative defenses five and six, the plaintiff argues that "the

appraisal panel, not the Court, must determine whether claimed damage was caused

by a covered or excluded peril." Plaintiff Biscayne Cove Condominium Association's

Motion for Summary Judgment on Both Counts of the Second Amended Complaint

(DE# 101 at 3, 10-12, 4/5/13). With respect to affirmative defenses four and seven, the

plaintiff argues that:

The issues raised by these affirmative defenses are entirely separate [sic]
the issue currently before the Court – whether the loss should be
evaluated in appraisal. Therefore, these affirmative defenses are
irrelevant to whether [the plaintiff] is entitled to a declaratory judgment
enforcing the appraisal provisions found in the insurance policy.

Id. at 12.

The defendant responds that "these affirmative defenses require an

17

interpretation of the Policy" and as such the Court should reserve ruling on them. Defendant's Response to Plaintiff's Motion for Summary Judgment (D.E. 101) (DE# 107 at 18, 4/25/13). The defendant cites to Garden-Aire Village South Condo. Ass'n, Inc. v. QBE Ins. Co., Order Denying Cross-Motions for Summary Judgment and Denying Motion to Strike Statement of Facts (DE# 135 at 10 in Case No. 10-61985, 11/20/12) (J. Dimitrouleas) wherein this Court denied summary judgment on affirmative defenses which "deal[t] with certain types of losses excluded under the terms of the policy, like wear and tear, law or ordinance, or defect."

The undersigned agrees with the plaintiff that affirmative defenses 4 through 7 are not relevant to the declaratory judgment issues raised in this lawsuit. "[C]ausation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed." Johnson v. Nationwide Mut. Ins. Co., 828 So.2d 1021, 1022 (Fla. 2002). The defendant's reliance on Garden-Aire is misplaced. In Garden-Aire, the defendant denied all coverage. See Garden-Aire, Order Denying Cross-Motions for Summary Judgment and Denying Motion to Strike Statement of Facts (DE# 135 at 10 in Case No. 10-61985, 11/20/12). In the instant case, the defendant maintains that it "has not denied coverage for loss or damages to the Property caused by Hurricane Wilma." Defendant QBE Insurance Corporation's Response to Plaintiff's Statement of Material Facts in Support of its Motion for Summary Judgment [D.E. 101] (DE# 108 at ¶18, 4/25/13).

Nonetheless, because the defendant would still be entitled to raise these affirmative defenses before the appraisal panel if the plaintiff prevails on Count II of its

18

Second Amended Complaint, entering summary judgment in favor of the plaintiff on

affirmative defenses 4 through 7 would not be appropriate. Instead, the Court will

disregard affirmative defenses 4 through 7 at trial. See 200 Leslie Condo. Ass'n, Inc. v.

QBE Ins. Corp., Order Denying Cross-Motions for Summary Judgment as to Count II of

the Third Amended Complaint (DE# 199 at 7-8 in Case No. 10-61984, 1/14/13)

(declining to address at trial affirmative defenses which should be addressed in the

appraisal process rather than in the proceeding to compel appraisal).

### C.    Affirmative Defenses 8 and 9

The defendant asserts the following as its eighth and ninth affirmative defenses:

**Eighth Affirmative Defense**

(Failure to State a Claim)

Plaintiff claims should be dismissed because they fail to state claims upon which
relief can be granted.

**Ninth Affirmative Defense**

(No Valid Dispute Requiring Declaratory Relief)

Plaintiff's claim for declaratory relief as to coverage for windows and sliding glass
doors should be dismissed in that there is no valid dispute entitling Plaintiff to
declaratory relief.

Defendant QBE's Answer and Affirmative Defenses to Plaintiff's Second Amended

Complaint (DE# 71 at ¶¶69-70, 2/13/13). The plaintiff argues that the eighth and ninth

affirmative defenses are either moot or have been resolved by this Court. Plaintiff

Biscayne Cove Condominium Association's Motion for Summary Judgment on Both

Counts of the Second Amended Complaint (DE# 101 at 12, 4/5/13).

The defendant does not make any argument with respect to affirmative defense

19

8. Affirmative defense 8 states that the plaintiff has failed to state a claim upon which relief can be granted. An affirmative defense admits the facts of the complaint and asserts additional facts in justification or avoidance of a claim. See Morrison v. Executive Aircraft Refinishing, Inc., 434 F. Supp. 2d 1314, 1319 (S.D. Fla. 2005) (citation omitted). "A defense which points out a defect in the Plaintiff's prima facie case is not an affirmative defense. Nonetheless, the proper remedy is not to strike the claim, but rather to treat it as a specific denial." Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia, 777 F. Supp. 2d 1322, 1328 (S.D. Fla. 2011) (internal citations, quotation marks and alternations omitted). Because affirmative defense 8 is not a true affirmative defense, the Court will treat it as a denial. The plaintiff's request for summary judgment on affirmative defense 8 is **DENIED**.

Affirmative defense 9 concerns the windows and sliding glass doors that are the subject of the Count I of the Second Amended Complaint (DE# 38, 8/10/12). The parties' arguments concerning affirmative defense 9 will be addressed in the Court's discussion of Count I below.

### D.    Affirmative Defense 10

As its tenth affirmative defense, the defendant asserts, in part, that:

[T]he coverage is void based upon frau[d], misrepresentation or concealment pursuant to the following policy provision:

> Commercial Property Conditions
> A.  Concealment, Misrepresentation or Fraud
>     This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any tine, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

Defendant QBE's Answer and Affirmative Defenses to Plaintiff's Second Amended

Complaint (DE# 71 at ¶71, 2/13/13) (citing Insurance Policy (DE# 101-2 at 19, 4/5/13)).

The plaintiff argues that it is entitled to summary judgment on the defendant's

tenth affirmative defense because the defendant "fails to identify a single

misrepresentation that [the plaintiff] allegedly made." See Plaintiff Biscayne Cove

Condominium Association's Motion for Summary Judgment on Both Counts of the

Second Amended Complaint (DE# 101 at 13, 4/5/13). The plaintiff maintains that the

parties' disagreement over an estimate provided by the plaintiff "hardly justifies [the

defendant]'s inflammatory allegations of fraud." Id.

In Florida, the elements of fraud are the following: "(1) a false statement of fact;

(2) known by the defendant to be false at the time it was made; (3) made for the

purpose of inducing . . . [that party] to act in reliance thereon; (4) action by the plaintiff

in reliance on the correctness of the representations; and (5) resulting damage." Royal

Bahamian Ass'n, Inc. v. QBE Ins. Corp., 750 F. Supp. 2d 1346, 1349 (S.D. Fla. 2010)

(citing Nova Hills Villas Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co., No. 07-60939,

2008 WL 179878, at *3 (S.D. Fla. Jan. 21, 2008)). When a claim of fraud arises in the

insurance context, the insurer does not need to "demonstrate that it relied on the

insured's misrepresentations when asserting a policy defense based on fraud; that a

material fraud was perpetrated by an insured in pursuing an insurance claim is

sufficient." Id. (citing Michigan Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 923

(11th Cir. 1998).

The defendant's tenth affirmative defense cannot be resolved on summary judgment under the facts of this case. Affirmative defense 10 states in part that:

> Plaintiffs have presented the damage estimates as part of and in support of their position that there is a dispute as to the amount of the damage with knowledge that the damage estimates contain false, incomplete or misleading information concerning the damages. **Multiple alleged damages have been intentionally included in this estimate which do not exist or are not attributable to the hurricane, and the claim presented by Plaintiffs in 2011 is intentionally inflated and exaggerated.** Intentional inflation and exaggeration of all or part of an insurance claim constitutes a material misrepresentation or concealment which is insurance fraud voiding coverage under the policy.

See Defendant QBE's Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (DE# 71 at 14, 2/13/13) (emphasis added). The issue of the plaintiff's intent cannot be resolved on summary judgment. "While in some rare instances, where operable facts are uncontroverted, a party may obtain summary judgment on a fraud count, generally the question of whether an insured has made a material misrepresentation is a question for the jury to determine." Royal Bahamian, 750 F. at 1356 (citations and internal quotation marks omitted).

In Cypress Chase Condo. Ass'n "A" v. QBE Ins. Corp., No. 10-61987-CIV, 2013 WL 1191413, at *7 (S.D. Fla. Mar. 22, 2013) (J. Cohn), this Court denied summary judgment on the defendant's fraud and concealment defense based on the following factual issues:

> Here, there is a factual question as to whether Plaintiff submitted its POL statement in good faith. QBE contends that Plaintiff's adjuster based his estimate on an improper extrapolation of the building's damages. QBE further asserts that Plaintiff overstated its claim by including the replacement costs of windows and sliding glass doors that were not damaged by Hurricane Wilma. Plaintiff responds that it never misled QBE,

but only refused to respond to certain "pretextual requests" for
information. Because there is a disputed issue of material fact as to
whether Plaintiff attempted to defraud QBE, the Court will deny summary
judgment on QBE's twelfth Affirmative Defense.

See also Garden-Aire Village South Condo. Ass'n, Inc. v. QBE Ins. Corp., Order

Denying Cross-Motions for Summary Judgment and Denying Motion to Strike

Statement of Facts (DE# 135 at 4 in No. 10-61985, 11/20/12) (denying summary

judgment on the affirmative defense of fraud and concealment because "it [wa]s a

question of fact whether Plaintiff committed some sort of fraud, misrepresentation, or

concealment that voids the entire policy.");[4] 200 Leslie Condo. Ass'n, Inc. v. QBE Ins.

Corp., Order Denying Cross-Motions for Summary Judgment as to Count II of the Third

Amended Complaint (DE# 199 at 7 in Case No. 10-61984, 1/14/13) (denying summary

judgment on fraud and concealment defense because testimony that insured's claim

was inflated created issue of fact).

In the instant case, there is a genuine issue of material fact as to whether the

plaintiff submitted its claimed loss to QBE in good faith. Accordingly, the plaintiff's

motion for summary judgment on the defendant's tenth affirmative defense is **DENIED**.

**2.**     **Summary Judgment on Count I - Coverage for Windows and Sliding Glass Doors**

The Second Amended Complaint (DE# 38, 8/10/12) alleges that: "This is an

action for declaratory relief concerning Plaintiff's rights under an insurance policy

---

[4] In Garden-Aire, QBE failed to carry its burden of proof on the fraud and
concealment defense at trial. See Garden-Aire Village South Condo. Ass'n, Inc. v. QBE
Ins. Corp., Findings of Fact and Conclusions of Law (DE# 176 at ¶90 in No. 10-61985,
11/20/12). Nonetheless, QBE's fraud and concealment defense was sufficient to
survive the summary judgment stage.

brought pursuant to section 86.011, <u>et. seq.</u> Florida Statutes and 28 U.S.C. § 2201."

The Court has diversity jurisdiction over this action because the parties are citizens of

different states and the amount in controversy exceeds the $75,000.00 jurisdictional

limit. 28 U.S.C. § 1332. Accordingly, the federal Declaratory Judgment Act governs this

action.[5]

> The federal Declaratory Judgment Act states that:
>
> **In a case of actual controversy** within its jurisdiction . . . any court of the
> United States, upon the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be sought. Any such
> declaration shall have the force and effect of a final judgment or decree
> and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). In Count I of the Second Amended Complaint

(DE# 38, 8/10/12), the plaintiff seeks declaratory relief that the damage to the windows

and sliding glass doors of condominium units were covered under the QBE insurance

policy.

At present, it is undisputed that the QBE insurance policy issued to the plaintiff in

the instant case covers the windows and sliding glass doors of the individual

condominium units. <u>See</u> Defendant's Response to Plaintiff's Motion for Summary

Judgment (D.E. 101) (DE# 107 at 7, 4/25/13) (stating that " . . . QBE served the

interrogatory responses wherein it stated that the windows and sliding glass doors were

---

[5] In <u>Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.</u>, 589 F. Supp. 2d 1336, 1343
(S.D. Fla. 2008) (citations omitted), this Court observed that it could not apply the state
declaratory judgment statute, Fla. Stat. § 86.011, in an action based on diversity
jurisdiction because "[t]here [wa]s nothing in this particular statutory provision that
confer[red] any substantive rights." Similarly here, the undersigned will only address
Count I in the context of the federal declaratory judgment statute.

covered property under the Policy.").[6] As such, it is clear that the Court cannot enter declaratory relief on Count I of the Second Amended Complaint (DE# 38, 8/10/12) because there no longer exists an actual controversy between the parties as to whether windows and sliding glass doors are covered under the policy. See Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1347 (11th Cir. 1999) ("Consistent with the 'cases and controversies' requirement of Article III, the Declaratory Judgment Act . . . specifically provides that a declaratory judgment may be issued only in the case of an 'actual controversy.'").

In the instant motion, the plaintiff argues that it is entitled to summary judgment on Count I of the Second Amended Complaint (DE# 38, 8/10/12) because of the defendant's prolonged refusal to take a position concerning coverage of the windows and sliding glass doors. See Plaintiff Biscayne Cove Condominium Association's Motion for Summary Judgment on Both Counts of the Second Amended Complaint (DE# 101 at 15-16, 4/5/13). The defendant opposes the relief requested. According to the defendant there was never a dispute as to whether windows and sliding glass doors were covered by the policy as evidenced by "the uncontested inclusion of windows and sliding glass doors in QBE's initial estimates and the discussions with Plaintiff's public adjuster about the claim." Defendant's Response to Plaintiff's Motion for Summary Judgment (D.E. 101) (DE# 107 at 7, 4/25/13). In lieu of summary judgment, the

---

[6] Of note, at least two judges in this district have granted summary judgment in favor of the insured and found that windows and sliding glass doors were covered under similar QBE insurance policies. See Mayfair House Ass'n, Inc. v. QBE Insurance Corporation, No. 07-80628-CIV, 2008 WL 4097663, at *7 (S.D. Fla. Aug. 29, 2008); Royal Bahamian Ass'n, Inc. v. QBE Insurance Corp., No. 10-21511-CIV, 750 F. Supp. 2d 1346, 1349 (S.D. Fla. 2010).

defendant argues that "the Court must dismiss Count I because there is no longer jurisdiction as to this Count." Id.

Other judges in this district have dealt with the issue of how to dispose of this declaratory judgment count after QBE has admitted coverage under the policy for the windows and sliding glass doors of the condominium units. In 200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp., Case No. 10-61984, the Court, with the agreement of the parties, determined that it would dispose of Count I after the trial. See Supplemental Order re: Pretrial Conference (DE# 189 in Case No. 10-61984, 1/8/13) (stating that "pursuant to the parties' agreement on the record, Count I of the Third Amended Complaint will not go to trial. The Court will issue an order disposing of Count I after the parties have been given an opportunity to submit briefs in support of their differing views on this matter."); Order Denying Cross-Motions for Summary Judgment as to Count II of the Third Amended Complaint (DE# 199 at 2 n.2 in Case No. 10-61984, 1/14/13) (stating that "While the parties agree that [QBE's admission that windows and sliding glass doors were covered under the policy] renders any further judicial labor unnecessary as to Count I, they disagree on whether the Court should dismiss it as moot or render summary judgment. For this reason, the Court is allowing the parties to submit additional briefing and deferring disposition of Count I until after trial.").

In Garden-Aire Village South Condo. Ass'n, Inc. v. QBE Ins. Corp., No. 10-61985, this Court dismissed Count II (coverage for windows under the policy) as moot. See Order Denying Cross-Motions for Summary Judgment and Denying Motion to Strike Statement of Facts (DE# 135 at 4 in No. 10-61985, 11/20/12). The Court stated

26

that:

> Because there is no longer a controversy between the parties on whether the windows are covered, the Court will dismiss Count II for lack of jurisdiction. Though the Court will not enter a declaratory judgment on this aspect of coverage, that is not to say that QBE's reluctance to reach a conclusion on window coverage could not be relevant in another portion of this litigation.

Id.

> In its reply, the plaintiff states that:

> As a practical matter, it makes little difference whether the Court enters summary judgment in Biscayne Cove's favor on this point, or grants QBE's request that Count I be dismissed as moot. Either way, if the Court were to order appraisal, it is clear that the appraisal panel may now properly consider inclusion of the windows and sliding glass doors its evaluation. Even if Count I were dismissed, Biscayne Cove would nevertheless be entitled to an award of prevailing party attorney's fees under section 627.428, Florida Statutes, pursuant to the confession of judgment doctrine.

See Plaintiff Biscayne Cove Condominium Association's Reply to Defendant QBE Insurance Corporation's Opposition to Plaintiff's Motion for Summary Judgment (DE# 118 at 2, 5/6/13). Based on the position taken by the plaintiff in its reply, the undersigned will dismiss Count I of the Second Amended Complaint (DE# 38, 8/10/12) as moot.

**3.      Summary Judgment on Count II - Appraisal**

In Count II of the Second Amended Complaint (DE# 38, 8/10/12), the plaintiff seeks declaratory relief that it is entitled to have the dispute regarding the amount of the plaintiff's loss resolved through the appraisal process described in the QBE insurance policy. The plaintiff is not entitled to summary judgment on Count II of the Second Amended Complaint (DE# 38, 8/10/12). Appraisal is only appropriate if the insured has

complied with its post-loss obligations. <u>United States Fid. & Guar. Co. v. Romay</u>, 744 So. 2d 467, 471 (Fla. 3d DCA 1999) (<u>en</u> <u>banc</u>). Whether the plaintiff has complied with its post-loss obligations under the policy is an issue of fact in the instant case for the reasons stated above. Additionally, the defendant has asserted the affirmative defense of fraud, misrepresentation or concealment. This affirmative defense also survives summary judgment. If the defendant is able to carry its burden of proof on this affirmative defense at trial, then the plaintiff would not be entitled to appraisal.

Because the undersigned has already determined that there are genuine issues of material fact concerning the plaintiff's compliance with post-loss obligations under the policy and because there are genuine issues of material fact as to whether the policy is void due to the plaintiff's alleged fraud, misrepresentation or concealment, the plaintiff is not entitled to summary judgment as to Count II of the Second Amended Complaint (DE# 38, 8/10/12).

## <u>CONCLUSION</u>

In accordance with the foregoing, it is

ORDERED AND ADJUDGED that the Plaintiff Biscayne Cove Condominium Association's Motion for Summary Judgment on Both Counts of the Second Amended Complaint (DE# 101, 4/5/13) is **GRANTED in part and DENIED in part**. The plaintiff is entitled to summary judgment as to its compliance with section E.3.a.(2) of the policy. Count I of the Second Amended Complaint (DE# 38, 8/10/12) is hereby **DISMISSED as moot**. The motion for summary judgment as to Count II of the Second Amended

Complaint (DE# 38, 8/10/12) is **DENIED**.

      DONE AND ORDERED in Chambers at Miami, Florida, this **12th** day of June, 2013.

                                          _____

                                          JOHN J. O'SULLIVAN
                                          UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record